# Davis v. Miller.

*Action for Damages against Employer, by Administratrix of Deceased Employee.*

1. *Review on appeal of order refusing new trial; when order should be reversed.*—When, on the review on appeal of an order refusing a new trial, the court, after according all reasonable presumptions of the correctness of the verdict and judgment below, is so convinced that the preponderance of the evidence is against the verdict as to leave no substantial doubt that it is wrong and unjust, the verdict will be set aside, and the judgment reversed.

2. *Negligence not an answer to a plea of contributory negligence.*—A replication setting up negligence of the defendant, in reply to a plea of contributory negligence on the part of the plaintiff, is bad; negligence not being an answer to a plea of contributory negligence.

3. *Infancy of plaintiff suing as administratrix; mode of raising objection.*—In an action for injuries causing the death of an employee, brought against the employer by the administratrix of the deceased, the question of the plaintiff's right to maintain the action as such personal representative must be raised by special plea, and her appointment as such representative by the probate court can not be attacked in that action on the ground that she was not entitled to administer because of her minority.

4. *Replication unsupported by evidence; issue need not be submitted to jury.*—Where the allegations of a special replication to a plea are unsupported by evidence, the issue raised by the replication need not be submitted to the jury.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JAMES T. JONES.

[Davis v. Miller.]

This was an action by Sarah M. Miller, as administratrix of the estate of Rudolph Miller, deceased, against Matthew L. Davis. The opinion states the substance of the complaint. The defendant demurred to the first and second counts of the complaint on the grounds that it was not shown that the alleged injury was the direct and proximate result of any specific negligence on the part of the defendant, and that each count failed to aver with sufficient certainty in what the defect or imperfect condition consisted. The defendant demurred separately to the third and fourth counts of the complaint, on the grounds that they showed that the alleged injury to the plaintiff's intestate was due to the negligence of a fellow servant, for whose acts in the premises the defendant was not liable; and that said counts fail to show in what the alleged negligence and carelessness of the fellow servants of the plaintiff's intestate consisted. The demurrers were overruled.

The defendant pleaded the general issue, and several special pleas, to which demurrers were sustained. Thereupon the defendant filed the following special pleas: "(2.) For further plea and answer to each count of said complaint, separately and severally, defendant says, *actio non*, because he says that at the time of the alleged injury the said Rudolph Miller, while riding on said cars, as alleged, failed to exercise that care and diligence to keep from falling off which an ordinary prudent man, under similar circumstances, would have ordinarily exercised, and that such conduct on his part directly and proximately contributed to his alleged injury in this way: that he had frequently traveled over that part of the track, which he well knew, going up and down grade, gives an uneven and jerking motion to the train at that particular point. Yet, notwithstanding these facts, he carelessly and negligently and heedlessly proceeded to roll and light or try to light and smoke cigarettes, using his hands for such purpose, and thereby depriving himself of the ability to hold on to the car just at the critical moment when the engine, rolling down the track on the hill, caused a slack, and, as it rolled on the track over the next hill, had jerked the slack out of the train, whereby Miller, by his said conduct, and carelessly and heedlessly, permitted himself to fall from his place on the car to the track, whereupon the wheels of said car

coming in contact with his person lying across the rail, which, chocking the passage of the wheels, caused said wheels of the forward truck to mount on his body, and rolled off of the rails on the cross-ties, followed by other wheels and other cars, causing a derailment of said logging cars, and wrecking of said logging cars, which, with the track and train, were previously in good order and condition; which said alleged negligence of Miller directly and proximately contributed to his alleged injury and death. (3) For further plea and answer to each count of said complaint, separately and severally, defendant says *actio non*, because he says that said Rudolph Miller, instead of observing and caring for his safety in the manner in which an ordinary prudent man, under similar circumstances, would ordinarily have done, undertook to roll or light and smoke a cigarette, using his hands for that purpose, and thereby depriving himself of the ability at the time to hold himself safely on said cars, and that said action upon the part of said Miller was negligence which directly and proximately contributed to his said alleged injury.' (4) For further plea and answer to each count of said complaint, separately and severally, defendant says *actio non*, because he says that, at and before the alleged accident, the said Rudolph Miller conducted himself in a careless and imprudent manner, and in a manner not required in the performance of any duty on his part, in this, that the said Miller, instead of riding on said cars in the manner in which he could and should have done, by holding on or by supporting or steadying himself by using his hands for that purpose, when the cars were going down and up hill over that part of the road where the alleged injury occurred, of the condition of which he had knowledge, and over which he had frequently ridden, and which was the proper manner for him to have acted and ridden under the circumstances, he negligently chose a more hazardous and dangerous method, and took his chances of being jostled off or thrown from the car by not using his hands to support, steady or hold himself upon the car at the time, which action on his part was negligence, and directly and proximately contributed to his said alleged injury." The plaintiff demurred to the third special plea upon the following grounds : " (1) Because the same fails to al-

[Davis v. Miller.]

lege any facts showing the manner in which ordinarily prudent men would, under similar circumstances, have acted for their own safety. (2) Because said plea fails to allege any facts showing that it was negligence on the part of plaintiff's intestate to undertake to roll, light, and smoke a cigarette, and to use his hands for that purpose, under the circumstances alleged in the complaint. (3) Because said plea fails to allege any facts showing that said injury was proximately contributed to by plaintiff's intestate's undertaking to roll, light, and smoke a cigarette, and to use his hands for that purpose.'' To the fourth special plea the plaintiff demurred on the following grounds: ''(1) Because said plea alleges no facts showing that it was negligence in the plaintiff's intestate, under the circumstances set up in said several counts, to do and omit to do the things alleged in said plea. (2) Because there are no facts alleged in said plea showing that either of the two methods of riding upon the train mentioned in said plea was sufficiently dangerous or hazardous to make the adoption of either of them negligent under the circumstances alleged in said several counts of the complaint hereinabove mentioned.'' These demurrers were overruled. The plaintiff then filed replications to said pleas, averring that the speed at which said train of cars was running was ''so great as to amount to reckless negligence'' on the part of the engineer; and, further, that the condition of the cars and track was such as to show reckless negligence on the part of the person in the service of the defendant intrusted by him with the duty of seeing that the ways, works and machinery were in good condition. The defendant demurred to these several replications on the ground that they did not allege facts with sufficient certainty to enable the defendant to join issue thereon, and failed to allege in what manner or in what particular the cars were negligently run, or the ways, works and machinery were in bad condition. These demurrers having been sustained, the plaintiff filed additional replications to said pleas, in which she charged defendant with reckless negligence. Demurrers to these replications having been overruled, issue was joined upon them.

It having developed in the course of the trial that the plaintiff was under twenty-one years of age, the defendant moved the court to dismiss the case on the ground

that the plaintiff was not *sui juris*, but an infant, and not entitled to maintain an action without suing by her next friend. The court overruled this motion, and the defendant excepted.

On the submission of the case, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (6) "The court charges the jury that if they believe from the evidence that the engine and five cars, including the car on which Miller was riding, had passed safely over the place of accident without running off, and that Miller, by his own carelessness and negligence, allowed himself to fall to the track, and thereby caused the derailment of the last three cars of the train, then the defendant is not liable." (7) "The court charges the jury that before they can find a verdict against the defendant on account of defendant's engineer having been a man of drinking habits, that they must believe from the evidence that the said engineer was under the influence of liquor at the time of the accident, and that it was because of his then and there being under the influence of liquor that he was negligent in the performance of his duty as such engineer, and that such negligence caused the death of the said Rudolph Miller, and that Rudolph Miller was not himself guilty of contributory negligence, the proximate cause of his death." (8) "The court charges the jury that if they believe from the evidence that Rudolph Miller conducted himself in a negligent and careless manner on or about the car of the defendant, by sitting on the bolster, instead of being at his post at the brake, and that such negligence on his part contributed proximately to his injury and death, then they must find for the defendant." (9) "The court charges the jury that if they believe from the evidence that Rudolph Miller was not at his post of duty as a brakeman while riding upon the car of defendant, but was conducting himself in a careless and negligent manner on places upon the car where his duty did not require him to be, and that by his own negligence he contributed proximately to the cause of his falling from the car, and death, the jury must find for the defendant, even though they should further believe that the defendant was negligent." (19) "The court

[Davis v. Miller.]

charges the jury, at the request of the defendant, that if they believe from the evidence that at the time immediately preceding the alleged accident the logging track of the defendant was in good condition.—that is, in as good condition as first-class logging roads of the same nature and kind are kept,—then they must find their verdict for the defendant under the first count of the complaint. And the court further charges the jury that if they believe from the evidence that at the time immediately preceding the alleged accident that the cars of the defendant were not in a defective and imperfect condition, then they must find for the defendant under the second count of the complaint. And the court further charges the jury that if they believe from the evidence that at the time of the alleged accident the engineer in charge of the locomotive which was drawing the said train was not guilty of any negligence in so running the said train over said track in its then condition, as alleged, as to negligently cause Rudolph Miller to be jostled and jolted and thrown from his position on the cars and killed, they must find their verdict for the defendant on the third count of the complaint. And the court further charges the jury that if they believe from the evidence that the engineer in charge of said train did not run the cars in a negligent and careless manner, so as to jolt any of said cars from said track, they must find for the defendant on the fourth count of the complaint. And the court further charges the jury that if they believe from the evidence that Rudolph Miller was so careless and negligent in his conduct and manner of riding upon the car from which he was thrown that it caused him to fall from, or to be jostled from, the car upon which he was riding, and fell [fall] under the wheels of other cars upon the train, and thereby meet his death, then they must find for the defendant upon each and every count of the complaint, although they might further believe that the defendant was also guilty of simple negligence."

There was a verdict in favor of the plaintiff. The defendant made a motion for a new trial, on the ground, among others, that the verdict was contrary to the evidence. The court overruled this motion, and to this ruling the defendant duly excepted. Judgment was

entered on the verdict for the plaintiff. The defendant appeals, and assigns as error the several rulings of / the trial court adverse to him. Other material facts are stated in the opinion.

FRANCIS B. CLARK, JR., and LEVERT CLARK, for appellant.

GREGORY L. & H. T. SMITH, *contra*.

McCLELLAN, J.—This action sounds in damages for the death of plaintiff's intestate, Rudolph Miller, alleged to have been caused by the negligence of the defendant, Davis, or of persons for whose negligence he is responsible. The complaint contains four counts, each alleging that Miller, being a brakeman on a logging railway owned and operated by Davis, came to his death while in the discharge of his duties, &c., by being thrown from a train or car and run over by other cars, &c. The first count attributes intestate's death to defects in the condition of the track, whereby the train was thrown from the rails, &c. The second count relies on the allalleged imperfect and defective condition of one of the cars in said train, whereby Miller was thrown to the ground and killed. The third count charges that Miller was "thrown to the ground and killed by reason of the fact that the engineer in charge of the locomotive, which was drawing said train, and who was in the employment of the defendant, negligently ran said train of cars at a speed at which it was unsafe to run said train over said track in its then condition," and that by reason of such negligence Miller was jostled and jolted and thrown from his position on said train, &c." The fourth count also relies upon negligence of the engineer in running the train at too great a rate of speed, and thereby jostling, jolting and throwing Miller off the train and killing him.

The general issue and contributory negligence were pleaded to each count; and to the plea of contributory negligence there were replications setting up wanton and willful misconduct on the part of the engineer as the cause of Miller's death.

There was no evidence adduced on the trial in support of the third and fourth counts of the complaint, or in support of the replications which set up such wantonness and willfulness. It was not shown at all that the engineer was either negligent or that he recklessly, wantonly or willfully brought about Miller's death. Nor was there any evidence in support of the second count of the complaint, charging that one of the cars in the train was in a defective condition. The only evidence relied on as supporting this count was that Cantrell, the conductor of the train, told Miller, a few minutes before the latter was killed, that he had found that a nut or tap which held the brake hanger was loose; but this evidence goes further and shows that Cantrell then and there remedied that defect by screwing up this nut or tap, so that at the time of the fatality—six or seven minutes after this—this defect did not exist. There was evidence tending to show that the brake rod extending from one set of trucks to the other underneath the car and trucks, and, indeed, next the ground, was found to be broken after the derailment, but it is very clearly shown that this was caused by, and was not the cause of, the derailment, having resulted from the rod coming in contact with the ground and crossties while the car ran for some distance with the wheels on the side on the roadbed between the rails and those on the other side off the roadbed and in the depression, drain or ditch extending along the ends of the cross-ties, so that the brake-rod came in contact with the ground, ties, &c., which were higher than the surface on which the wheels of one side were rolling.

The case was really fought out and determined on the first count of the complaint. Under that count there was some evidence going to show that the track at the point where the cars left the rails was in a defective condition. Two witnessses for the plaintiff testified that they went to the place a week afterwards and found there two rotten cross-ties, which appeared to have been taken out of the track at the point of the derailment, and bore the mark of car wheels upon them. To the contrary, the preponderance of the evidence goes to show that the track all along there was in excellent condition, that no rotten or defective cross-ties were in it, and that but one tie was taken out after the derailment,

and that was a sound tie but had been split in the wreck.

But whatever conclusion the evidence might have justified the jury in reaching as to whether the track was defective at that point, the evidence is so overwhelming in the establishment of the proposition that Miller did not come to his death in consequence of such defect, if any existed, that we feel constrained to hold that the court erred in not granting the defendant's motion for a new trial, based on the ground that the verdict was contrary to the evidence. This was a log train, consisting of an engine and eight skeleton log cars or carriages. These cars are mere frames, used only for the transportation of logs, and are very light as compared with cars of any sort used on regular roads. The engine, of course, is much heavier than any of the cars. None of the cars were loaded on this occasion. The engine and five of the cars passed safely over the point of derailment, and only the three last cars were wrecked. It would seem that if the derailment was due to the presence under the rails at that point of rotten ties, the rails would have given away or spread under the heavier burden of the engine, and not have passed it and five of the cars safely over, only to succumb to the much lighter weight of the sixth car. Nay more, it is shown that this train had passed over that point once or twice before on that day, loaded with logs, and no trouble was experienced with the track at this or any other point. It would seem, in all reason, that if there were crossties under the track at this point so rotten as not to be capable of supporting a light, skeleton, empty car, the track would certainly have given away or spread under the incomparably severer test to which it had that day been subjected by the running of the same train heavily loaded with logs over it. Again, all the witnesses who had any opportunity of knowing testify that the rails were not loosened from the ties at all, that the rails did not spread at all, and that the gauge of the rails was not changed in any degree by the wreck; but that the only injury done to or shown by the track was that one cross-tie was split and that the track at the point of the wreck was *slewed* out of line as much as from one to three or four inches, *i. e.*, that the whole track, both rails and the ties, was for a distace of several feet slightly out of alignment, but that the rails, notwithstanding this, remained the same distance apart

as before, at all points; the gauge was maintained; and these witnesses say that the train could have safely passed over this track before it had been repaired, further than to remove the wreckage. This slight change in the alignment of the track was not the cause, but a consequence of, the derailment of the last three cars; it existed after, but not before the wreck. And it is inconceivable that this *slewing* of the track—both rails to an equal extent, and the ties to one side—and the splitting of one tie, to which, however, the rails were still fastened, could have been the only consequences of a derailment caused by the spreading of the track or its otherwise giving away on account of the rottenness of cross-ties under it. That these were the only consequences to the track, that it showed no other defect or injury after the wreck, is proved by such overwhelming evidence as left no justification for a contrary finding by the jury. It would seem of necessity to follow from this also that the derailment of said cars was not caused by any defect in the defendant's track. But this conclusion finds even more unequivocal and powerful support in other evidence to which we have not at all alluded. The only witness, one Blackstone, whose eye was upon Miller at the moment he fell from the car was introduced by the plaintiff herself. He is apparently an intelligent, and is shown to be a disinterested, witness. He was not in the service of the defendant, but was on the train, sitting on the rear end of the tender, with his face to the rear of the train. This witness swears that Miller was sitting on the rear bolster of the fifth car from the engine and the fourth car from the rear; that he saw him rolling a cigarette just before the accident, that he seemed to lean over as if to strike a match, and then disappeared between the fifth and sixth cars from the engine. That the sixth car then began bumping and jumping, and finally, along with the seventh and eighth, went off the track. All the evidence shows that the fifth car, on which Miller was riding, did not leave the rails at all. Another witness, whose eye was upon Miller a moment before he fell, corroborates Blackstone as to Miller's rolling the cigarette and as to the irregular motions of the sixth car immediately after he fell, and the ensuing derailment of that and the two following cars. And there is abundant evidence by all the witnesses that

[Davis v. Miller.]

Miller was dragged some distance under the cars before any of them left the track, and that the three rear cars left the rails ·at the point where the wheels finally ran over Miller's body. That some of the wheels on both sides passed over his person is clearly shown. That the cars being light, the wheels did not sever his body or his limbs, is also shown. That in passing over him they must therefore have risen clear of the rails, follows necessarily. That when the wheels, after being thus clear of and above the rails, came down again they missed the rails, and the car was off the track, is demonstrated by the fact that Miller's body was found just at that point, and there too were found the greatest evidences of the fatal injuries he received, such as blood, pieces of the scalp and bones of the leg, &c.; and the signs of his being dragged along the road-bed continued up to that point. Without going further in detail into the evidence, the conclusion is inevitable that the sole cause of the derailment of the cars was the presence of Miller's body under them. The only consideration opposed to this conclusion is the inference supposed to be afforded by the testimony of two of plaintiff's witnesses that some days after the accident they saw. near the track at this point two rotten cross-ties which appeared to have been taken from the track where the cars left it. The evidence is preponderating, as we have said, that neither these nor any other rotten ties were ever in the track at that point. But admit they were, the inference sought to be drawn from the fact—that their presence caused the derailment—is met, and emasculated, and refuted and wholly overturned by each of the several considerations to which we have adverted, and, especially and conclusively, by the evidence of the eye witnesses to the occurrence, and the details of the scene and situation after the accident, to which numerous witnesses depose, corroborating the eye witnesses and agreeing with each other. The evidence of Miller's preoccupation in rolling and trying to light a cigarette while sitting in an insecure place on the car sufficiently accounts for his losing his balance and falling off, with entire consistence with the theory of the defendant and the facts that the track was in good condition and the engineer was not negligent in running the train. And Miller's having fallen off and being under the first car which left the rails ac-

counts with like consistence for the derailment of the cars. The jumping and jerking and final derailment of the sixth and after cars was not the cause, but the consequence, of Miller's falling from the fifth car; and his fall was not due to any negligence of the defendant or to any negligence for which the defendant is responsible.

After according all reasonable presumptions of the correctness of the verdict and judgment below, it is our conviction that the preponderance of the evidence is so decided in favor of the foregoing conclusions of fact, and therefore against the verdict, as to leave really no substantial doubt that the verdict is wrong and unjust, and to impose the duty on us of reversing the judgment and setting aside the verdict.—*Cobb v. Malone & Collins*, 92 Ala. 630.

The complaint is not open to the objections taken to it by the demurrers, if to any. The amended pleas of the defendant are good against the assignments of demurrer laid against them.

If the first replications to the special pleas, averring "reckless negligence," are to be taken as charging negligence only,—we think they are to be so construed,—they were bad. Negligence is not an answer to a plea of contributory negligence. If they were held to charge wantonness or willfulness, they would be, and the several replications subsequently filed are, bad, as departures from the cause of action stated in the complaint.—*Louisville & Nashville R. Co. v. Markee*, 103 Ala. 160; *George v. Mobile & Ohio R. Co.*, ante, p. 245. But no demurrer was interposed on this ground.

The statute gives the right of action for injuries causing the death of an employe to the personal representative of the dead man. We do not think that the appointment of a person as such representative made by the probate court can be attacked in the action for damages on the ground that he was not entitled to administer because of his minority, and that so long as his appointment stands, so long as he is in fact such administrator, he is entitled to maintain the suit, whether he is twenty-one years of age or not. Moreover, the question could not be raised in this case for the want of a special plea.—*Louisville & Nashville R. Co. v. Tramnell*, 93 Ala. 350.

[Davis v. Miller.]

There was no evidence offered by the plaintiff in support of its replications of wantonness or willfulness; and hence some of the charges refused to defendant, which would have been improper had there been such evidence, should have been given. Charges 6, 7, 8, 9, and perhaps others, were of this character.

Charge 19 should have been given. It is true that this charge contains several propositions, and refers separately to each count of the complaint, directing a verdict for the defendant under each count on the state of facts hypothesized as to each, and the rule is well settled that if any one of the propositions so embraced is unsound the whole must be refused; and it is also quite true that the exception to the refusal of the court to give this charge is a general exception, and under the rule it will avail nothing unless all of the propositions of the charge are correct; but, giving full scope to these considerations, the court must still be held to have erred in refusing this charge. The replications of wantonness and willfulness to the pleas of contributory negligence, though bad in themselves, were not demurred to on the only ground upon which they were objectionable, and hence the issue of wantonness and willfulness was in the case, and had there been any evidence tending to support these replications, this charge 19 would have been improper. But with that issue out of the case, because of a failure of proof upon it, every proposition of this charge was sound, and applicable to the case.

The question of Miller's contributory negligence was one for the jury. It could not in this case be affirmed that he was guilty of contributory negligence from the mere fact that he was not at the brakes but sitting on the rear bolster of the car when he fell; nor can the fact that while occupying that position he rolled and attempted to light a cigarette be affirmed to have been negligence proximately contributing to his death. These were facts for the consideration of the jury, along with the other evidence, and some of the defendant's charges were bad because their tendency was to encroach upon the jury's province in this connection.

We deem it unnecessary to discuss the rulings on evidence, or further discuss the charges, especially in view of the fact that under *Markee's case, supra* and the views we have expressed in this case, the issues will not be

the same on another trial, if one is had, and the same points are not likely to arise again.

The judgment of the circuit court is reversed, and the cause is remanded.